UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLA S. CARPENTER,
                          Plaintiff,

v.

ANDREW M. SAUL,
COMMISSIONER OF
SOCIAL SECURITY,
                          Defendant.

_____

**DECISION AND ORDER**

18-CV-00191

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review

the final determination of defendant Andrew M. Saul, the Commissioner of Social Security,[1]

that plaintiff was not entitled to Social Security benefits. The parties have consented to the

jurisdiction of a Magistrate Judge [18].[2] Before me are the parties' cross-motions for judgment on

the pleadings [11,14]. Having reviewed the parties' submissions [11,14,16], I order that this case

be remanded to the Acting Commissioner for further proceedings.

## BACKGROUND

        Plaintiff applied for Social Security Disability ("DIB") benefits on April 22, 2014

(R. 168)[3], alleging a disability as of September 28, 2013 due to a history of breast cancer,

arthritis, insomnia, hot flashes, plantar fasciitis, fibromyalgia and fatigue (R. 201). After

plaintiff's claim for benefits was initially denied, an administrative hearing was held on August

---

[1]        *See* Reddinger v. Saul, 2019 WL 2511379, *9 n. 1 (D. Conn. 2019) ("on June 17, 2019, Andrew
M. Saul became the Commissioner of Social Security. Because Carolyn Colvin was sued in this action
only in her official capacity, Andrew M. Saul is automatically substituted for Carolyn Colvin as the
named defendant. See Fed. R. Civ. 25(d). The Clerk of the Court shall amend the caption in this case as
indicated above").

[2]        Bracketed references are to the CM/ECF docket entries.

[3]        References denoted as "R." are to the administrative record [6]. Unless otherwise indicated, page
references are to numbers located on the bottom of the document pages.

1, 2016 before Administrative Law Judge ("ALJ") Sharon Seeley (R.49). Plaintiff was 61 at the time of the hearing (R. 168). ALJ Seeley issued a decision denying benefits on November 2, 2016 (R. 43). The Appeals Council denied plaintiff's request for review, and plaintiff thereafter commenced this action.

## DISCUSSION

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B. Did the ALJ Fail to Properly Develop the Record and Consider Plaintiff's Fibromyalgia?

SSR 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia[.]" SSR 12-2p, 2012 WL 3104869, *1 (July 25, 2012). "[S]pecifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive

tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded." Cooper v. Commissioner of Social Security, 2019 WL 1109573, *4 (W.D.N.Y. 2019).

Prior to the history of hearing, ALJ Seeley asked plaintiff's representative about the basis for the diagnosis of fibromyalgia (R. 54). After some discussion, plaintiff's representative stated that ALJ Seeley should obtain "records from Western New York Rheumatology that predate what's in the file" because the basis for the diagnosis should be reflected in those records (R. 55). The record does not indicate that ALJ Seeley made any attempt to obtain these records. Instead, at stage two of the sequential process, ALJ Seeley determined that despite numerous references to a diagnosis of fibromyalgia by plaintiff's various treating physicians, since the basis for the diagnosis was not in the record, plaintiff had not established fibromyalgia as a medically determinable impairment (R. 31).

Plaintiff argues that ALJ Seeley failed to properly develop the record with respect to her fibromyalgia. [11-1], p. 19.  It is well established that where there are deficiencies in the record, an administrative law judge bears an affirmative duty to develop the administrative record. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999); Tomassi ex rel. v. Colvin, 2014 WL 316727, *6 (N.D.N.Y. 2014). The non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits". Sims v. Apfel, 530 U.S. 103, 111 (2000). This duty exists even where, as here, the claimant is represented by counsel. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a

claimant's medical history even when the claimant is represented by counsel"); *see also* <u>Tomassi</u>, 2014 WL 316727, at *6.

To properly assess whether plaintiff suffers from fibromyalgia, ALJ Seeley was obligated to obtain medical records relating to that diagnosis, or to seek clarification from appropriate medical providers. Although the record reflects that plaintiff was initially diagnosed with fibromyalgia in 2012 by Dr. Levy and Dr. Grisanti (R. 333), no medical reports from these doctors are contained in the record. In addition, it is not clear whether all of the records from Dr. Linda Burns of Buffalo Rheumatology and Medicine, who treated plaintiff for her various complaints of pain, are included in the record. While plaintiff suggests that she began seeing Dr. Burns in 2012 (R. 205), the earliest records from Dr. Burns are dated in 2015 (R. 460).

The Commissioner does not assert that any attempt was made to obtain the records from Western New York Rheumatology, Dr. Levy, or Dr. Grisanti, and can only represent that the record "appears" to contain all of Dr. Burns' records. Nevertheless, the Commissioner argues that ALJ Seeley was not obligated to seek additional information because there were no obvious gaps in the administrative record (Commissioner's Memorandum [14-1], p. 23). As discussed above, however, an obvious gap in the record exists here and was recognized by ALJ Seeley prior to the administrative hearing. The failure to attempt to obtain these records, or to obtain clarification as to the basis of the diagnosis of fibromyalgia constitutes a failure to properly develop the record. A remand for this purpose is required.

Therefore, this case is remanded to the Commissioner for further administrative proceedings to develop the record and to obtain clarification as to the basis of plaintiff's diagnosis of fibromyalgia. Plaintiff also argues that ALJ Seeley erred by failing to consider plaintiff's fibromyalgia to be a severe impairment. [11-1], p. 23. This issue is moot. Because I am remanding this matter for clarification relating to plaintiff's fibromyalgia, a reassessment of

whether plaintiff's condition constitutes a severe impairment will be necessary upon development of the record.

**C.  Did the ALJ Fail to Properly Consider the Opinions of Plaintiff's Treating Physicians?**

Plaintiff also argues that ALJ Seeley failed to properly consider the opinion of Dr. William Stephan, her primary care physician since 1998 (R. 239). The record reflects that plaintiff was frequently treated by Margaret White, a Nurse Practitioner ("NP") in Dr. Stephan's office, for achy joints and endocrine problems (R. 334). As early as January 19, 2012, her pain was so severe that it was difficult to function particularly in the morning. Id.  Plaintiff stated that she wished to follow a "natural approach" with respect to dealing with her pain. Id. NP White stated that plaintiff was to be seen by "Dr. Grisanti or one of his associates for rheumatology" in light of the severity of her discomfort. Id. On March 15, 2012, NP White noted that plaintiff had been seen by "by Dr. Levy and Dr. Grisanti" and was diagnosed with fibromyalgia (R. 333). According to NP White, plaintiff reported that she has continued pain and discomfort "pleased to know the source" of the pain. Id.[4]

NP White examined plaintiff again on September 12, 2013 (R. 328). Among other findings, NP White stated:

> "4. Fibromyalgia and plantar fasciitis. The patient has a multitude of health problems. She states that she is able to work and chooses to continue to do so, however the 12-hour shifts that is required to work cause significant achy in her joints and even paying up to her prosthetic . . . in her breast. Given this, her palpitations in history of cancer I believe eight-hour shifts are reasonable and she does receive a note to this effect stating she is to work no more than 34 hours a week only."

---

[4]     Plaintiff had previously been diagnosed and treated for breast cancer (R. 289). She experienced "excruciating pain" in connection with radiation treatments (R. 287).

(R. 328). On October 2, 2013, plaintiff called Dr. Stephan's office and requested a letter excusing her from work (R. 327). On October 3, 2013, she notified Dr. Stephan's office that she was quitting her job because she could not physically perform it and that a letter would be unnecessary. Id.

Plaintiff continued to experience various pains. She was diagnosed with neuralgia when she experienced a strong shooting pain down her arm (R. 331). In March 2014, plaintiff attempted to work two days a week as a server, but indicated that she could not tolerate stairs (R. 318). On August 7, 2014, Dr. Stephan wrote the following letter:

> "[Plaintiff] is a patient of mine for many years. She has been battling breast cancer for over ten years. Approximately four years ago she was diagnosed with fibromyalgia. She has had severe muscle aches throughout her body as well as significant fatigue. This has significantly interfered with her ability to work. [Plaintiff] has continued to try to work but with a minimal amount of work and standing, she is completely exhausted and essentially incapacitated.
>
> It is my recommendation that [plaintiff] go on total permanent disability due to her multiple medical problems which include the history of breast cancer as well as the fibromyalgia. Also of note, the patient has suffered from significant insomnia as well as depression."

(R. 452). Plaintiff continued to be treated by Dr. Stephan and NP White for fatigue and joint pain. On October 15, 2014, NP White noted that plaintiff "lives with constant pain and fatigue, activity either sitting or standing aggravates her pain" (R. 455). On December 2, 2015, Dr. Stephan assessed plaintiff's various medical problems, including fibromyalgia and chronic fatigue, and stated that plaintiff "remains totally and permanently disabled from fibromyalgia and CFS"[5] (R. 491).

---

[5] CFS stands for chronic fatigue syndrome. Smiley v. Colvin, 2015 WL 5918376, *3 (W.D.N.Y. 2015).

ALJ Seeley rejected Dr. Stephan's opinion (R. 41). The opinion of a treating physician is entitled to controlling weight so long as it is consistent with the other substantial evidence. Halloran v. Barnhart, 362 F.3d 28, 32 (2nd Cir. 2004) (*per curiam*); 20 C.F.R. §404.1527(c)(2). When an ALJ discredits the opinion of a treating physician, the regulations direct the ALJ to "always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion". 20 C.F.R. §404.1527(c)(2); Snell, 177 F.3d at 134.

The ALJ first must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other significant factors. Halloran, 362 F.3d 28, 32; *see also* 20 C.F.R. §§404.1527(c)(2)-(6). The Second Circuit has advised that the courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran, 362 F.3d at 33.

Here, ALJ Seeley did not directly address the Halloran factors, but rejected Dr. Stephan's opinion as being "inconsistent with the claimant's ability to work at Ashley Home for up to 32 hours until her employer wanted her to work 12-hour days, as well as the claimant's other activities described above" (R. 42).[6] This does not constitute a good reason for the rejection of Dr. Stephan's opinion. Initially, the record reflects that plaintiff was working only part-time at

---

[6]     The "other activities" to which ALJ Seeley refers are not evident. While ALJ Seeley summarizes plaintiff's statements to the effect that she can bathe and dress herself, and perform various household tasks (R. 34), the ALJ acknowledges that plaintiff qualified her ability to do so by stating that she sometimes needs help with these tasks and performing such activities causes her pain and fatigue. Id. In any event, the performance of such household tasks, without more, does not demonstrate a person's capacity to sustain full-time work in a competitive setting. It is well-settled that "such activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves". Niles v. Astrue, 32 F. Supp. 3d 273, 287 (N.D.N.Y. 2012); *see also* Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Ashley's, and that plaintiff quit that job when they attempted to force her into full-time work, which would include 12-hour shifts (R. 69-70). Until that point, Plaintiff had been working only four days a week, with shifts of six to eight hours (R. 71). In any event, it is undisputed that plaintiff quit that job in October 2013 (R. 327). The fact that plaintiff was able to perform in a part-time position prior to October 2013 has no bearing upon the opinions issued by Dr. Stephan in August 2014 and December 2015.

ALJ Seeley also suggested that she rejected Dr. Stephan's opinion because "neither fibromyalgia nor chronic fatigue syndrome is established by the evidence in this case" (R. 42). This rationale also fails to present good reasons for the rejection of Dr. Stephan's opinion. As discussed above, ALJ Seeley failed to properly develop the record with respect to plaintiff's fibromyalgia. Based upon such an incomplete record, ALJ Seeley rejection of the fibromyalgia diagnoses fails to constitute a good reason for the rejection of Dr. Stephan's opinion.

The Commissioner contends that the fact that plaintiff continually applied for full-time jobs after leaving Ashley's supports ALJ Seeley's rejection of Dr. Stephan's opinion. Commissioner's Memorandum [14-1], p. 26. However, plaintiff's persistent but unsuccessful attempts to find work she can perform should not be held against her. "A desperate person might force herself to work -- or . . . certify that she is able to work -- but that does not necessarily mean she is not disabled". Richards v. Astrue, 370 Fed.Appx. 727, 732 (7th Cir. 2010). In any event, it is well settled that neither the Commissioner not this court may engage in *post hoc* efforts to determine what the ALJ would have done had the ALJ considered the issue. *See* McKinstry v. Astrue, 2012 WL 619112, *4 (D. Vt. 2012) aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court may not accept appellate

counsel's *post hoc* rationalizations for agency action"). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir.1983).

Because ALJ Seeley failed to provide good reasons not to give weight to the opinion of Dr. Stephan, this matter is remanded to the Commissioner for further proceedings.

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this case is remanded for further proceedings, consistent with the issues discussed above, and the Commissioner's motion for judgment on the pleadings [14] is denied.

Dated: September 12, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge